UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KURT PHILIP, also known as Kurt Phillip,

                       Plaintiff,

v.                                                9:10-CV-643
                                                 (FJS/TWD)

WILLIAM D. BROWN and YASIN LATIF,

                       Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

KURT PHILIP, also known as Kurt Phillip
99-A-3711
Plaintiff *pro se*
Chantimelle
St. Patrick's
Grenada, West Indies


HON. ERIC T. SCHNEIDERMAN             CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS , United States Magistrate Judge

## REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983 ("§ 1983"), was initially referred to Magistrate Judge George H. Lowe for Report and Recommendation by the Honorable Frederick J. Scullin, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Upon Magistrate Judge Lowe's retirement on February 9, 2012, Judge Scullin referred the case to me.

Plaintiff Kurt Philip ("Philip") claims that in March of 2009, while he was an inmate at the Eastern Correctional Facility ("Eastern Correctional"), Defendants denied his right to equal protection by turning down his request to attend his father's funeral despite having granted the requests of similarly situated inmates. Currently pending before the Court are the parties' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. Nos. 28 and 36). For the reasons discussed below, I recommend that the Plaintiff's motion for summary judgment be denied and Defendants' cross-motion be granted.[1]

### I.     BACKGROUND

On March 3, 2009, Defendant Yasin Latif ("Latif"), a chaplain at Eastern Correctional, informed Philip that his father Joseph Philip ("Joseph") had died. (Dkt. No. 1 ¶ 8). Latif asked him if he wanted to go to his father's funeral, and Plaintiff responded that he did. *Id.* ¶¶ 8 and 9. Philip's attendance at the funeral required the approval of Eastern Correctional superintendent, Defendant William D. Brown ("Brown"). (Dkt. No. 36-7 at p. 2).

As a part of the approval process, Latif conducted an investigation to establish the parental relationship between Philip and Joseph. *Id.* According to Latif, Plaintiff initially told him that Joseph was his biological father. (Dkt. No. 36-6 ¶ 12). However, in telephone conversations with Philip's family that occurred after his conversation with Plaintiff, Latif was told that Joseph was the

---

[1] Philip's notice of motion does not identify the Defendant(s) against whom summary judgment is sought. (Dkt. No. 28 at p.1). However, in paragraph 10 of his affirmation, Plaintiff states that he is releasing Defendant Yasin Latif from liability in this action. *Id.*, p. 6. Moreover, in the conclusion to his memorandum of law, the Plaintiff wrote only that the court should grant summary judgment on the issue of Brown's liability. *Id.,* p. 21. Since Defendant Latif has cross-moved for summary judgment, Plaintiff's claim against him will nonetheless be addressed herein.

2

Plaintiff's stepfather. *Id.* When Latif informed Plaintiff about the conversations, Philip told him that Joseph had adopted him. *Id.* Latif contacted the family for further information on the relationship and was informed by Plaintiff's mother that Joseph had adopted Philip, who was born in 1980, in 1988. (Dkt. No. 28-1 at p. 53 ¶¶ 1 and 2). She subsequently provided Latif with a document from Grenada entitled "Births Re-registered under the Legitimation Ordinance" ("Birth Re-registration") identifying Joseph as the Plaintiff's adoptive father as of 1987.[2] *Id.* at 55.

After finishing his investigation, Latif completed an application for permission to attend the funeral that was forwarded to Defendant Brown, along with other pertinent information and documentation, for consideration. *Id.;* (Dkt. No. 36-6 ¶ 5). In the application, Defendant Latif identified Joseph as Plaintiff's stepfather, followed by an asterisked note explaining that Joseph had adopted Plaintiff in Grenada in 1988. (Dkt. No. 1, Exhibit A).

Defendant Brown routinely delegated the processing and preliminary approval/disapproval of funeral attendance requests to subordinate staff – in this case Deputy Superintendent of Security, Thomas Griffin ("Griffin"). (Dkt. No. 36-5 ¶ 5; Dkt. No. 36-6 ¶ 12). According to Latif, Griffin expressed concern with whether the authenticity of the Birth Re-registration from Grenada could be verified and asked Latif for additional clarification of Plaintiff's relationship with Joseph. *Id.* ¶¶ 11-12. There is no evidence that any clarification was forthcoming.

Griffin ultimately recommended that Plaintiff's request to attend Joseph's funeral be denied on the grounds that the deceased was Plaintiff's stepfather, and stepparent deaths did not qualify for

---

[2] The copy of the Birth Re-registration submitted by Plaintiff in support of his motion for summary judgment bears a June 23, 2009 certification, indicating that it cannot be the same copy provided to Defendant Latif by Plaintiff's mother in March of 2009 when Philip's funeral visit request was being processed. (Dkt. No. 28-1 at p. 55).

funeral visits under applicable Department of Corrections and Community Services ("DOCCS") Directive 4901 dealing with the transport of prisoners. (Dkt. No. 28-1 at p. 78; Dkt. No. 36-5 ¶ 10). Defendant Brown adopted Griffin's recommendation, but not before personally reviewing Philip's application and conducting his own investigation of all DOCCS materials available at the facility that were relevant to Plaintiff's familial relationships.[3] (Dkt. No. 1, Exhibit A; Dkt. No. 36-5 ¶¶ 5-6, 10, 38-39, 41).

Approximately two months before recommending denial of Plaintiff's funeral visit request, Griffin had authorized Eastern Correctional inmate William Evans' attendance at his stepmother's funeral. (Dkt. No. 28-1 at pp. 60-63). Michael Deveaux, an inmate at Eastern Correctional from 1995 to 2004, had also been given permission to attend his stepparent's funeral during his incarceration. (Dkt. No. 28-1 at pp. 58-59).

Plaintiff filed a grievance over the denial with the Inmate Grievance Program. (Dkt. No. 36-9 at p. 7). An initial grievance determination finding the denial improper was overruled on appeal by Defendant Brown who concluded that the request had been properly denied in accordance with DOCCS Directive 4901 on transporting prisoners, which does not include stepparents on the list of relatives to whose funerals inmates may be transported. *Id*. at p. 4-5. The Central Office Review Committee ("CORC") upheld Brown's determination, acknowledging "the discretion of the facility administration to make appropriate decisions regarding the approval or disapproval of a funeral visit in accordance with department policies." *Id*. at p. 1. CORC found no malice on the part of the staff. *Id*.

---

[3] A July 14, 2009 communication from Plaintiff's correctional counselor stated that Joseph was listed as Plaintiff's father in the Eastern Correctional records. (Dkt. No. 28-1 at p. 64).

4

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action against Defendants Brown and Latif on June 1, 2010. (Dkt. No. 1). Defendants responded with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 14). The motion was referred to Magistrate Judge Lowe for Report and Recommendation by Judge Scullin. (Dkt. No. 15). In his Report and Recommendation, Magistrate Judge Lowe recommended that the Defendants' motion to dismiss be denied. (Dkt. No. 16). Judge Scullin accepted the Report and Recommendation in its entirety and denied the motion to dismiss. (Dkt. No. 17).

Defendants filed an answer, and the parties engaged in limited discovery before Plaintiff filed a motion for summary judgment on July 20, 2011. (Dkt. Nos. 18 and 28). On September 29, 2011, Defendants filed a cross-motion for summary judgment. Plaintiff requested an extension of time to respond to the cross-motion and was given until November 15, 2011. (Dkt. No. 38). To date, Plaintiff has neither filed opposing paper nor has he sought a further extension of time to do so.[4]

---

[4] Plaintiff's failure to respond to the cross-motion is likely explained at least in part by his change in circumstances since he filed his summary judgment motion. When Plaintiff initially filed his motion, Defendants were granted an extension of time to October 1, 2011 to respond on the grounds that discovery had not been completed. (Dkt. No. 29). The court denied Philip's request to vacate the extension made on the grounds that by the time Defendants filed opposition papers, he would either be at home in Brooklyn, in an immigration facility awaiting deportation, or in Grenada, and would not have the benefit of the Eastern Correctional legal staff to assist him with a reply. (Dkt. No. 31). On September 26, 2011, the Clerk's Office received a notice of change of address for Plaintiff, effective September 19, 2011, indicating that he had been moved from the Eastern Correctional to the Buffalo Federal Detention Facility. (Dkt. No. 35). A subsequent change of address notification from Plaintiff, postmarked on November 9, 2011 (prior to the deadline for filing opposition papers), Philip explained that he had been deported to Grenada. The address given in the notice is "Kurt Philip, Chantimelle, St. Patrick's, Grenada, West Indies." To date, Philip has not provided any additional information with regard to his whereabouts.

5

### III. APPLICABLE LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242-251-252 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).[5] A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In determining

---

[5] In opposition to Plaintiff's motion and in support of their own, Defendants Latif and Brown have submitted their respective interrogatory responses which, while signed, were not signed under oath as required by Rule 33(b)(3) of the Federal Rules of Civil Procedure. (Dkt. Nos. 36-5 and 36-6). Plaintiff has also included documents of questionable admissibility in support of his motion for summary judgment and also submitted and relied upon Defendant Brown's unsworn interrogatory responses. Neither Plaintiff nor Defendants has moved to strike or otherwise objected to the other's submission of arguably inadmissible evidence. As a result, I have deemed objections to admissibility to have been waived. *See DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 114 (2d Cir.), *cert. denied*, 484 U.S. 965 (1987) (admissibility objections are waived if no motion to strike is made, especially where both sides have relied upon unsworn papers).

whether a genuine issue of material[6] fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).[7] However, a *pro se* party's "bald assertion" completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### IV. ANALYSIS

*A. Plaintiff's Failure to Oppose Defendants' Cross-Motion for Summary Judgment*

Philip filed his affirmation, three supporting affidavits, documentary evidence, and a N.D.N.Y. L.R. 7.1(a)(3) Statement of Material Facts in support of his own motion for summary judgment. (Dkt. 28-1). However, despite being served with the District's Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, Plaintiff failed to file any opposition to Defendants' cross-motion for summary judgment.[8] A plaintiff's failure to oppose a summary judgment motion does not by itself mean that the motion is to be granted automatically. An unopposed summary judgment motion may properly be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotes and citations omitted).

---

[6] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

[7] *Pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions. *See Jemzura v. Public Serv. Com'n*, 961 F.Supp. 406, 415 (N.D.N.Y. 1997).

[8] L.R. 56.2 imposes a duty on the movant to provide the notification to a *pro se* plaintiff.

Where, as in this case, a party has been given satisfactory notice of the consequences of failing to respond to a motion for summary judgment, the nonmovant's failure to respond to the movant's statement of material facts will result in the facts set forth in the statement being accepted as true to the extent they are supported by the evidence in the record.[9] *See*. L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>.") (emphasis in original).

A district court has no duty to perform an independent review of the record to find proof of a factual dispute where the nonmovant fails to respond to a summary judgment motion. *See Amnest America. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2000). This is so even where a plaintiff is appearing *pro se* because even *pro se* plaintiffs must obey the Court's procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Although not obligated to do so, I have elected to conduct a review of the entire record in this case. *See Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000) (a court may, in its discretion, "choose to conduct an assiduous review of the record" even when a party has failed to file a statement of material facts).

Where, as here, a court chooses to conduct an independent review of the record, Plaintiff's verified complaint should be treated as an affidavit which may be relied upon, along with his submissions in support of his own summary judgment motion, in opposing Defendants' cross-motion

---

[9] *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") (citation omitted).

for summary judgment.[10] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes."). Plaintiff's affidavits and verified complaint must be based upon personal knowledge to be sufficient to create an issue of fact for purposes of supporting his own motion or defeating Defendants' cross-motion for summary judgment. Rule 56(c)(4) of the Federal Rules of Civil Procedure. In other words, they cannot be based upon "information and belief" or hearsay. (*Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2005). Moreover, "conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998).

B.      *Plaintiff's § 1983 Claim Against Defendant Latif*

Plaintiff has alleged that Defendant Latif violated his rights under the Equal Protection Clause by identifying Joseph as his stepfather rather than his father in the funeral visit application. (Dkt. No 1 ¶ 22). According to Plaintiff, Latif described Joseph as his stepfather despite knowing that Joseph was identified as his father on all of Philip's DOCCS records; that Philip had been an adolescent living with Joseph at the time he was incarcerated; and that Joseph had legally adopted him in 1988. *Id.*, ¶¶ 11-13. Philip contends that identifying Joseph as his stepfather violated his equal protection rights because if Joseph had been identified as his father on the application, he would have been allowed to attend his father's funeral like other similarly situated inmates. His claim is without merit.

1.      *Latif's Identification of Joseph as Plaintiff's Stepfather*

A prison inmate has no constitutionally protected liberty or property interest in attending or

---

[10] Plaintiff's complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with §1746).

9

receiving approval to attend a family member's funeral. *Roman v. Donelli*, 616 F.Supp.2d 299, 305 (N.D.N.Y. 2007), *aff'd*, 347 Fed.Appx. 662 (2d Cir. 2009); *Jackson v. Portuondo*, 9:01-CV-0379 (GLS/DEP), 2007 WL 607342, at *12 (N.D.N.Y. Feb. 20, 2007). Further, the mere refusal to allow an inmate to attend the funeral of a family member does not violate equal protection rights. *Roman,* 616 F.Supp.2d at 303.

However, the fact that the mere refusal to allow Plaintiff to attend Joseph's funeral did not constitute a violation his equal protection rights does not end the inquiry into whether his right to equal protection has been violated. The Equal Protection Clause requires the government to treat similarly situated people alike. *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It is most commonly used to assert claims of discrimination based upon membership in a protected class. Where, as in this case, Plaintiff has not claimed membership in a protected class,[11] violations of the right to equal protection may be actionable as class of one claims. *Analytical Diagnostic Labs, Inc.*, 626 F.3d 135, 140 (2d Cir. 2010), *cert. denied*, ___ U.S. ___, 131S.Ct. 2970 (2011). A class of one claim exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical,* 626 F.3d at 140 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In order to succeed on a class-of-one-claim, a plaintiff must establish that:

---

[11] In his Report-Recommendation recommending denial of the Defendants' motion to dismiss, Magistrate Judge Lowe found that the Plaintiff had not alleged that he is a member of any protected class. (Dkt. No 16 at p. 6). Plaintiff has made no claim of membership in a protected class in his summary judgment motion papers and is not a member of a protected class by virtue of his status as a prisoner at the time of the alleged denial of his right to equal protection. *See Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir. 1997) (neither prisoners nor indigents are members of a suspect or quasi-suspect class for Equal Protection purposes).

> (i) no rational person could regard the circumstances plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir. 2005)*, abrogated on other grounds, Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).[12] There must be an "extremely high" level of similarity between the plaintiff and the persons with whom he compares himself. *Neilson*, 409 F.3d at 104. Furthermore, class of one plaintiffs are required to prove *"*intentional disparate treatment, that is, [they must ] demonstrate the decision makers were aware that there were other similarly-situated individuals who were treated differently." *Analytical*, 626 F.3d at 143 (quoting *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (internal quotes omitted).

Plaintiff has failed to establish that Latif intentionally treated him differently from others similarly situated by describing Joseph as his stepfather on the application. *Analytical*, 626 F.3d at 140. Philip has not identified any similarly situated comparators and has merely speculated that he would have been allowed to attend his father's funeral if Joseph had been listed as his father on his application.[13] Therefore, Latif's identification of Joseph as Plaintiff's stepfather on the application

---

[12] *Appel* recognized that *Neilson* was overruled by *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008) insofar as it involved a public employee asserting a class of one claim. Its articulation of the elements of a class of one claim remain intact. *See Analytical*, 626 F.3d at 140, n. 1.

[13] The evidence shows that Latif was at one point told by a family member of Plaintiff's that Joseph was his stepfather offering some justification for describing him as such. (Dkt. No. 36-6 at p. 3). However, even if Latif had not been justified in identifying Joseph as the Plaintiff's stepfather in the application, Philip would not have an equal protection claim solely by virtue of having been denied the chance to attend his father's funeral. *Roman,* 616 F.Supp.2d at 303 (mere refusal to allow an inmate to attend the funeral of a family member does not violate his equal protection rights).

cannot be found to have constituted a violation of Plaintiff's right to equal protection.

    2.    *Latif's Lack of Direct Participation or Intent to Engage in Disparate Treatment*

The evidence also rules out a finding of direct participation by Latif in the decision to deny the funeral visit, without which there can be no award of monetary damages against him under § 1983. In a § 1983 claim brought against a defendant in his personal capacity, the plaintiff must establish that the defendant, acting under color of state law, caused the plaintiff to be deprived of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Evidence of actual involvement by a defendant state actor in the deprivation of a plaintiff's constitutional rights is a prerequisite to an award of damages in a personal capacity suit. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). There must be evidence of a tangible connection between a defendant's actions constituting a denial of the plaintiff's constitutional rights and the injuries allegedly sustained. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). A plaintiff can show personal involvement by establishing that the defendant "directly participated in the infraction." *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).

The scope of Defendant Latif's duties as chaplain and the limits of his authority are clearly defined in DOCCS Directive 4206. (Dkt. No 36-7). Latif was tasked with reviewing Plaintiff's DOCCS records in an effort to establish his relationship with Joseph and, if the relationship was unclear from the records, calling the family to arrange for document verification. (Dkt. No. 36-7 at p. 1). The evidence shows that Latif performed those duties. Latif was also responsible for preparing the funeral visit application and submitting it to Defendant Brown, along with documents relevant to the relationship. *Id.*, at p. 2. (Dkt. No. 28-1 at p. 78).

Directive 4206 reveals that Defendant Latif was not authorized to approve or deny the

application. *Id.* (Dkt No. 28-1 at p. 78). That authority resided with Defendant Brown, as superintendent at Eastern Correctional. *Id.* Brown accepted Griffin's recommendation that Plaintiff's request be denied because Joseph was Philip's stepfather, and funeral visits for stepparents were not authorized. His decision was made with full knowledge, not only of the fact that Joseph had been described as Plaintiff's stepfather on the application, but of Latif's notation on the application disclosing the adoption, the Birth Re-registration from Grenada reflecting the adoption, and Plaintiff's DOCCS records identifying Joseph as his father. (Dkt. No. 36-5 ¶¶ 38-41).

Furthermore, even if there were evidence that Latif had directly participated in the decision to deny Plaintiff's request, there is no evidence that he was aware that William Evans and Michael Deveaux had been allowed to attend their stepparents' funerals.[14] Therefore, the intentional disparate treatment requirement for a class of one equal protection claim cannot be satisfied with respect to Latif. *See Analytical*, 626 F.3d at 141.

For the foregoing reasons I recommend that Defendant Latif's cross-motion for summary judgment be granted, and that the Plaintiff's complaint against him dismissed.[15]

C.   *Plaintiff's § 1983 Claim Against Defendant Brown*

Plaintiff claims that Brown violated his right to equal protection by denying his request to attend Joseph's funeral on the grounds that he was his stepfather when one Eastern Correctional inmate had been allowed to attend a stepparent's funeral some two months earlier and another a

---

[14] Latif was not the chaplain involved in processing Evan's application. (Dkt. 28-1 at p. 63). The identity of the chaplain involved with the much earlier Deveaux application has not been established, but there is no evidence suggesting it was Latif.

[15] As noted above, Plaintiff appears to have abandoned his claim against Defendant Latif. If that is not the case, and Plaintiff intended to include Latif in his motion for summary judgment, I recommend that his motion be denied.

number of years before.[16]

    1.    *Brown's Personal Involvement*

Brown can be held personally liable for damages under § 1983 only if he participated directly in the alleged violation of Plaintiff's equal protection rights. *Colon*, 58 F.3d at 873. In support of his cross-motion for summary judgment, Brown has argued that the record reflects that his only involvement in the decision to deny the funeral visit was supervisory – the acceptance of a recommendation "researched and supplied by subordinates." (Dkt. No. 36-1 at p. 14).

The doctrine of *respondeat superior* "...standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003). Further, a "mere 'linkage in the prison chain of command' is insufficient to implicate ... a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Personal involvement of supervisory defendants like Brown may be shown by evidence that they: (1) participated directly in the alleged constitutional violation, (2) failed to remedy a violation after learning of it through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in managing subordinates who committed constitutional violations, or (5) the

---

[16] Plaintiff also claims that Defendant Brown violated the Equal Protection Clause by disregarding evidence establishing that Joseph was his adoptive father and identifying him as his stepfather. However, as with his similar claim against Latif, Plaintiff has failed to identify any similarly situated comparators, a necessary component of a class of one equal protection claim. Further, there is arguably sufficient evidence of confusion and uncertainty concerning the relationship between Plaintiff and Joseph and of difficulties in verifying the validity of the Birth Re-registration from Grenada to justify identifying Joseph as Plaintiff's stepfather with respect to the funeral visit application.

defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon,* 58 F.3d at 873.[17]

Brown's own evidence establishes that he was a direct participant in the denial of Plaintiff's request to attend Joseph's funeral. According to Brown, the processing and preliminary approval/disapproval of funeral visit requests was always carried out by subordinate staff. (Dkt. No. 36-5 ¶¶ 5-6). His role was to review the subordinate's work and render a final approval or disapproval. *Id*. Although following his usual practice, Brown did delegate the preliminary work on Plaintiff's request to Griffin, by his own admission, Brown directly participated in the denial of Plaintiff's request. Brown has acknowledged that he personally: (1) conducted an investigation into Philip's family relations prior to denying his funeral visit request; (2) examined all materials available at the facility containing information pertaining to Plaintiff's family relations; and (3) read the funeral visit application in its entirety before denying Plaintiff's request. *Id.* ¶¶ 38-41.

2.   *Brown's Rationale for Denying Plaintiff's Funeral Visit Request*

While the evidence does establish that Brown directly participated in the acts that Plaintiff contends violated his equal protection rights, it does not support a finding of liability against him on Plaintiff's class of one equal protection claim. In order to prevail on his equal protection claim, Philip must establish that he was subjected to "irrational and wholly arbitrary treatment." *Giordano*, 274 F.3d at 751. New York law, which makes the granting of funeral visits entirely discretionary (s*ee Jackson* 2007 WL 607342, at *11), lends support to Brown's determination that transporting

---

[17] The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) has arguably nullified some of the categories set forth in *Colon*. *See Sash v. U.S.*, 674 F.Supp.2d 531, 543-544 (S.D.N.Y. 2009). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of these motions that *Colon* remains good law.

prisoners for stepparent funeral visits was not authorized.

New York statute, Corrections Law § 113, states:

> The commissioner may permit any inmate confined by the department except one awaiting the sentence of death to attend the funeral of his or her father, mother, guardian or former guardian, child, brother, sister, husband, wife, grandparent, grandchild, ancestral uncle or ancestral aunt within the state, or to visit such individual during his or her illness if death be imminent; but the exercise of such power shall be subject to such rules and regulations as the commissioner shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.

Stepparents are not included in § 113. Nor are stepparents specifically included in DOCCS Directive 4901 (Transporting Prisoners), which states that:

> The following list of persons are the only persons whom the inmate may [be allowed deathbed and funeral visits]: father, mother, legal guardian or former legal guardian, child brother, half-brother, sister, half-sister, spouse, grandparent, grandchild, ancestral uncle or ancestral aunt within New York State. (Dkt. No. 36-8 at p. 9)

In *Neilson*, 409 F.3d at 105, the Second Circuit explained that in an equal protection class of one case "......the existence of persons in similar circumstances who received more favorable treatment than plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." (citing *Olech*, 528 U.S. at 565). Brown's literal compliance with the language of § 113 and Directive 4901, whose legitimate governmental policy can be assumed to be protecting the public from the potential dangers in allowing prison inmates outside of the confines of the correctional facility, cannot be said to be either irrational or wholly arbitrary.

The evidence does reveal two unexplained instances where inmates were allowed to attend a stepparent's funeral, one only two months before the denial of Plaintiff's request.[18] The substantial number of years between the time Michael Deveaux was allowed to attend his stepfather's funeral and the denial of Plaintiff's request, along with the absence of factual detail with regard to Deveaux, precludes a determination that there was an "extremely high" level of similarity between Philip's situation and his. *See Neilson*, 409 F.3d at 104.

It is more than somewhat puzzling why William Evan's request to attend his stepmother's request was granted and only two months later Plaintiff's was denied on the sole ground that funeral visits for stepparents were not authorized. However, the difference in treatment between the two men is not enough for Philip to prevail on his class of one claim where the denial of his request had the support of both § 113 and Directive 4901, and it was allowing Evans to go to his stepmother's funeral that appears to have run afoul of the literal language of both.[19]

3. *Lack of Evidence of Intentional Disparate Treatment by Brown*

Plaintiff has also failed to refute Defendants' evidence supporting Brown's claim that he

---

[18] The only evidence submitted by the parties with regard to the two instances is a short affidavit by Michael Deveaux stating that he had been allowed to attend his stepfather's funeral (Dkt. No. 28 at pp. 58-59), and a short affidavit by William Evans and copy of his approved funeral visit application. (Dkt. No. 28 at pp. 60-63). The Court, therefore, has no way of ascertaining the degree of similarity among the three funeral visit requests beyond the fact that they all involved stepparents.

[19] If there had been a sufficient number of comparators who had been allowed to attend stepparent funerals to show an established standard, the outcome might be different. *See Engquist*, 553 U.S. at 602. ("What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed."). However, in this case, it is just as likely, if not more so, that a mistake was made in allowing Evans to attend his stepmother's funeral as it is that Plaintiff was treated unfairly.

did not engage in intentional disparate treatment – that he was not "aware that there were other similarly-situated individuals who were treated differently." *Analytical*, 626 F.3d at 143. There is no evidence that Defendant Brown was involved in the decision to allow Evans to attend his stepparent's funeral, or that he was even aware that authorization had been given.[20] In fact, the application reveals that Evan's request was approved by Griffin, not Brown. (Dkt. No. 28-1 at p. 63). Moreover, Brown has denied knowing that Griffin had approved funeral visits for stepparents as his designee and claims no knowledge as to whether such funeral visits were allowed at Eastern Correctional before Brown became superintendent. (Dkt. No. 31).

As questionable as Griffin's actions in approving Evan's request and two months later recommending denial of the Plaintiff's may be, they were Griffin's actions, not Brown's, and Griffin is not named as a defendant in this lawsuit. The fact that Brown was Griffin's supervisor does not give rise to personal liability for damages since Brown cannot be held liable under § 1983 for actions taken in a supervisory capacity. *Hayut*, 352 F.3d at 753.

I, therefore, recommend that Plaintiff's motion for summary judgment against Defendant Brown be denied, and Brown's cross-motion for summary judgment dismissing Plaintiff's complaint against him be granted.

D.   *Plaintiff's Claim for Compensatory Damages*

Plaintiff has alleged that as a result of the denial of his equal protection rights he has suffered physical, emotional, and mental injuries. According to the Plaintiff, he saw the institutional

---

[20] There is also no evidence that Brown knew of, or was involved in, the Deveaux authorization. Brown did state in his interrogatory responses that he has no knowledge whether stepparent funeral or death bed visits were allowed at Eastern Correctional prior to the time he became superintendent. (Dkt. No. 36-5 ¶ 36).

y

psychologist for three months because of the trauma, was unable to sleep for several days and had to be placed on medication, and suffers enduring loss and family ostracism from being unable to attend his father's funeral. (Dkt. No 1 ¶¶ 29-32). Defendants have asserted an affirmative defense under 42 U.S.C. § 1997e(e) in their answer. (Dkt. No. 18 ¶ 37).

Even if Plaintiff's equal protection claim could survive summary judgment against one or both Defendants, it is unlikely that he would be entitled to recover the compensatory damages he has demanded in his complaint. (Dkt. No. 1 ¶¶ 33-35). 42 U.S.C. § 1997e(e), as construed by the Second Circuit, does not allow monetary damages in § 1983 actions absent a showing of physical injury. *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). In the absence of physical injury, recovery is limited to nominal or punitive damages, or injunctive and declaratory relief. *Id.* The injuries alleged by the Plaintiff, all in conclusory fashion, appear to be limited to symptoms typically associated with mental and emotional distress and do not constitute physical injuries under § 1997e(e). *See e.g. Cannon v. Burkybile*, 2000 WL 1409852, *6, 2000 U.S. Dist. LEXIS 14139, *19 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress and stomach anxiety not sufficient to meet the physical injury requirement under § 1997e(e)).

E.  *Qualified Immunity*

Defendants have asserted qualified immunity as an affirmative defense in their answer. (Dkt. No. 18 ¶ 34). Since the Plaintiff cannot establish that his rights under the Equal Protection Clause were violated, "there is no necessity for further inquiries concerning qualified immunity." *Los Angeles County v. Rettele*, 550 U.S. 609, 616 (2001).

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 28) be

19

psychologist for three months because of the trauma, was unable to sleep for several days and had to be placed on medication, and suffers enduring loss and family ostracism from being unable to attend his father's funeral. (Dkt. No 1 ¶¶ 29-32). Defendants have asserted an affirmative defense under 42 U.S.C. § 1997e(e) in their answer. (Dkt. No. 18 ¶ 37).

Even if Plaintiff's equal protection claim could survive summary judgment against one or both Defendants, it is unlikely that he would be entitled to recover the compensatory damages he has demanded in his complaint. (Dkt. No. 1 ¶¶ 33-35). 42 U.S.C. § 1997e(e), as construed by the Second Circuit, does not allow monetary damages in § 1983 actions absent a showing of physical injury. *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). In the absence of physical injury, recovery is limited to nominal or punitive damages, or injunctive and declaratory relief. *Id.* The injuries alleged by the Plaintiff, all in conclusory fashion, appear to be limited to symptoms typically associated with mental and emotional distress and do not constitute physical injuries under § 1997e(e). *See e.g. Cannon v. Burkybile*, 2000 WL 1409852, *6, 2000 U.S. Dist. LEXIS 14139, *19 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress and stomach anxiety not sufficient to meet the physical injury requirement under § 1997e(e)).

E.  *Qualified Immunity*

Defendants have asserted qualified immunity as an affirmative defense in their answer. (Dkt. No. 18 ¶ 34). Since the Plaintiff cannot establish that his rights under the Equal Protection Clause were violated, "there is no necessity for further inquiries concerning qualified immunity." *Los Angeles County v. Rettele*, 550 U.S. 609, 616 (2001).

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 28) be

**DENIED**, and the Defendants' cross-motion for summary judgment (Dkt. No. 36) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:     March 13, 2012
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge